UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ASMA CROSS,

        Plaintiff,

    v.

MARSHALLS OF MA, INC.,

        Defendant.

Case No. 18-cv-04230-SVK

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 24

### TABLE OF CONTENTS

I.    INTRODUCTION ........................................................... 1

II.    BACKGROUND ............................................................ 1

    A.    Plaintiff and her employment by Marshalls ............................ 1

    B.    Marshalls' company policies ........................................ 1

    C.    Plaintiff's interactions with supervisor Giron ..................... 2

    D.    The June 2015 Rodriguez statement ................................. 3

    E.    The August 2016 trash compactor incident .......................... 4

    F.    Marshalls' investigation .......................................... 5

    G.    Plaintiff's termination ........................................... 6

    H.    Plaintiff's discrimination claims ................................. 6

III.    LEGAL STANDARD ...................................................... 7

IV.    DISCUSSION ........................................................... 8

    A.    Discrimination Claims ............................................. 8

1.     Age discrimination claim ......................................................................... 8

2.     Racial discrimination claim ..................................................................... 9

3.     Religious discrimination claim ............................................................... 10

     a.     Direct evidence of discrimination ................................................ 11

       i.     Evidence of Ms. Rodriguez's alleged statement .............................. 11

       ii.     Hearsay .............................................................................. 11

       iii.     Stray remarks ...................................................................... 12

       iv.     Conclusion regarding direct evidence ....................................... 13

     b.     Circumstantial evidence ............................................................. 13

       i.     Employer's reason for suspension/termination ............................. 14

       ii.     Pretext ............................................................................... 15

          (1)     No showing of pretext based on Plaintiff's allegations regarding Ms. Giron ... 16

          (2)     No showing of pretext based on Plaintiff's allegations regarding Mr. Kalbfleisch ...................................................................................... 17

B.     Remedies .......................................................................................... 19

V.    EVIDENTIARY OBJECTIONS ............................................................................ 19

VI.  CONCLUSION ............................................................................................. 19

## I.    **INTRODUCTION**

Plaintiff Asma Cross alleges that her former employer, Defendant Marshalls of MA, Inc. ("Marshalls"), discriminated against her on the basis of race, religion, and age, culminating in her termination on August 31, 2016.  Dkt. 1 (Complaint) ¶¶ 13-14.  Now before the Court is Marshalls' motion for summary judgment.  Dkt. 24.  The parties have consented to the jurisdiction of a magistrate judge.  Dkt. 7, 8.  The Court held a hearing on August 13, 2019.  After considering the parties' submissions, arguments at the hearing, the case file, and relevant law, the Court GRANTS Defendant's motion for summary judgment for the reasons discussed below.

## II.    **BACKGROUND**

### A.    **Plaintiff and her employment by Marshalls**

Plaintiff is Muslim, African American, and over the age of 40 years old.  Complaint ¶ 6; Dkt. 31 (Cross Decl.) ¶ 5.  She was employed by Marshalls during two time periods:  from 1999 to 2001, and from approximately November 14, 2011 to August 31, 2016.  Complaint ¶ 2; Cross Decl. ¶ 3.  This lawsuit concerns Plaintiff's second term of employment.  *See* Complaint ¶¶ 5-13.  During that time, Plaintiff was employed as an Assistant Manager at Marshalls stores in Mountain View and San Jose, California.  Complaint at ¶ 2.  Plaintiff received written performance reviews in 2012, 2013, 2014, 2015, and 2016 stating that her work performance "meets expectations" or "exceeds expectations," and she received a merit raise in 2015.  Cross Decl. ¶ 4 and Exs. 1 and 2.

### B.    **Marshalls' company policies**

Marshalls, an off-price retailer, has corporate guidelines concerning the markdown of merchandise.  Dkt. 24-4 (Giron Decl.) ¶¶ 2-3 and Ex. A (the "Markdown Policy").  Under the Markdown Policy, employees must record all marked-down merchandise in a Store Generated Markdown ("SGM") report in the company's computer system.  *Id.* ¶2.  Merchandise may be marked down for several reasons:  (1) the merchandise has not been sold in the store within a certain time period; (2) Marshall's home office determines that certain merchandise should be marked down; (3) the merchandise is damaged but saleable; or (4) merchandise is "mismated" (such as if one pair of a six-pack of socks is missing) but the rest can be sold.  *Id.*  The guidelines provide that certain categories must be marked down and not discarded, but if merchandise is

deemed too damaged to be sold, it cannot simply be discarded. *Id.* ¶ 3. Instead, the merchandise must be marked out of stock, coded into Marshall's computer system before being disposed, and issued a red sticker signifying that the item had been marked out of stock. *Id.* The policy requires management to ensure the proper markdowns have been taken before sending damaged merchandise to salvage or discarding it. *Id.*

Other Marshalls' company policies include an Associate Relations Behavior Policy (the "Negligence Policy"), which provides that negligence (including "failure to exercise due care with, or causing damage to Company, vendor, customer, or fellow Associates' property, either intentionally or through carelessness") and other misconduct may be grounds for immediate termination of employment. Dkt. 24-7 (Welch Decl.) ¶ 4 and Ex. A. In addition, Marshalls' Honesty Policy states that the company's Loss Prevention department will investigate all cases of dishonesty, defined as "any deliberate act that results in the loss of Company, Associate, or customer property regardless of value," and that Marshalls' policy is to terminate employees who have been dishonest. *Id.* ¶ 5 and Ex. B.

### C. Plaintiff's interactions with supervisor Giron

In April 2015, Adriana Giron was promoted to the position of Store Manager of the store located on Stevens Creek Boulevard in San Jose, where Plaintiff then worked, and became Plaintiff's manager. Complaint ¶ 8; Giron Decl. ¶ 4. Ms. Giron remained in the Store Manager position until after Plaintiff's termination. *See* Giron Decl. ¶ 4. Plaintiff claims that from the time Ms. Giron became Store Manager, she treated Plaintiff less favorably than other subordinates because she did not greet Plaintiff, yelled at Plaintiff in front of customers, was more picky about how Plaintiff did her job, and stared at Plaintiff during meetings. Cross Decl. ¶ 8.

Following an incident in May 2016 when Plaintiff claims that Ms. Giron yelled at her regarding the purchase of paper plates for an employee potluck, Plaintiff complained to Bill Kalbfleisch, who at the time was the District Manager overseeing the Stevens Creek store. Cross Decl. ¶¶ 15-16; Dkt. 24-3 (Kalbfleisch Decl.) ¶ 2. Plaintiff told Mr. Kalbfleisch that Ms. Giron was discriminating against her based on race and religion. Cross Decl. ¶ 16. Shortly thereafter, Plaintiff followed up by texting Mr. Kalbfleisch about her discrimination complaint against

2

Ms. Giron.  Cross Decl. ¶ 17 and Ex. 4.

On July 12, 2016, Ms. Giron issued a "Formal Counseling" to Plaintiff, identifying several problems with Plaintiff's performance and setting expectations to address them.  Cross Decl. ¶ 18 and Ex. 5.[1]

### D.      The June 2015 Rodriguez statement

In a declaration submitted in opposition to Defendant's summary judgment motion, Plaintiff describes a statement she overheard as follows:

> Shortly in or after June 2015 when Ms. Marlene Rodriguez was Operations Manager of the Stevens Creek Store, reporting to Ms. Giron, and while I was walking from the sales floor to the office used by Assistant Floor Managers, I passed by Ms. Giron's office which had its door open.  While passing by, I heard Ms. Rodriguez saying that that [sic] people from the Middle East or Muslims would not be hired at the Stevens Creek Store because Ms. Giron said she did not want to hire them.

*Id.* ¶ 9.  In her deposition Plaintiff described Ms. Rodriguez's statement differently, as referring only to religion, without any reference to race or national origin:  "Marlene [Rodriguez] said, oh, Adriana [Giron] doesn't want any more here Muslims here [sic] being hired."  Cross Depo. at 187:1-3; *see also id.* at 194:9-10 ("I heard her talk about the Muslim – heard Marlene talk about the Muslim part").[2]  Plaintiff was specifically asked whether Ms. Rodriguez's statement referred Middle Easterners:

Q:      Was it Muslims, or was it Middle Easterners, or was it both?

A:      It's both.

Q:      She said, what?

A:      She didn't say – it's both.

Q:      So Adriana – strike that.

Marlene told you that Adriana said she didn't want to hire more Muslims or Middle Easterners?

A:      When Marlene was talking, she was referring to Muslims.

---

[1] Plaintiff's papers set forth additional complaints against Ms. Giron and Mr. Kalbfleisch which are addressed in section IV.A.3.b.ii. below.

[2] Following the summary judgment hearing, at the Court's request, Defendants' counsel submitted the complete deposition transcripts for the following witnesses:  Asma Cross (Plaintiff), Adriana Giron, Bill Kalbfleisch, Jeffrey Ricketts, and Marlene Rodriguez.  Dkt. 43.

Cross Depo. at 214:9-18.  The Court further notes that Plaintiff's declaration is inconsistent with her deposition testimony insofar as the declaration indicates that Ms. Rodriguez suggested that Marshalls formulated a policy of not hiring persons of a certain background; at deposition, Plaintiff testified only that she heard Ms. Rodriguez say that Ms. Giron "did not want any  more … Muslims here being hired."  Cross Depo. at 187:1-3.

Plaintiff also alleges that Ms. Giron and Ms. Rodriguez excluded Plaintiff from interviewing potential new hires.  Cross Decl. ¶ 12.  According to Plaintiff, "Ms. Rodriguez told me that Ms. Giron wanted the other Assistant Store Managers to be present at the interviews but not me."  *Id.*  Ms. Cross states that she was the only Muslim Assistant Store Manager at the Stevens Creek store.  *Id.*

### E.      The August 2016 trash compactor incident

Marlene Betancourt, Backroom Coordinator at the Stevens Creek store, recalls seeing Plaintiff at the trash compactor in the back room of the store in August 2016.  Dkt. 24-2 (Betancourt Decl.) ¶ 4.  According to Ms. Betancourt, this was odd because Plaintiff generally did not take out trash.  *Id.*  Ms. Betancourt recalls retrieving two to three boxes of merchandise from the trash compactor after seeing Plaintiff.  *Id.* ¶ 5.  Ms. Betancourt states that some of the merchandise did not have red stickers indicative of being marked out of stock, and the merchandise appeared to be saleable.  *Id.*  Ms. Betancourt placed the boxes under a table, reported the incident to Jose Cabrera, an Assistant Store Manager, and told him that she suspected that it was Plaintiff who had thrown away the merchandise.  *Id.* ¶ 6.

Mr. Cabrera told Ms. Giron that Ms. Betancourt had found two boxes of merchandise belonging to Plaintiff's departments in the trash compactor.  Giron Decl. ¶ 7.  Ms. Giron reported the information provided by Mr. Cabrera to Jeffrey Ricketts, the District Loss Prevention Manager.  *Id.*  She also told Mr. Ricketts that recently, before leaving for vacation, she had informed all Assistant Store Managers, including Plaintiff, that they should complete all mismates, rewraps, and damages by the time she returned from vacation.  *Id.*; Cross Dec. ¶ 22.  Ms. Giron also told Mr. Ricketts that Plaintiff was the manager working on August 21, 2016, which is why she believed Plaintiff may have thrown away the merchandise.  Giron Decl. ¶ 7.

### F.  Marshalls' investigation

Mr. Ricketts conducted an investigation into the August 2016 allegations regarding Plaintiff.  Dkt. 24-6 (Ricketts Decl.) ¶ 3.  He reviewed video footage showing that Plaintiff threw two large boxes into the store's trash compactor on August 21, 2016.  *Id.*  According to Mr. Ricketts, after Plaintiff threw the boxes in the trash compactor, she pushed the boxes further into the compactor using what appeared to be a long metal pole.  *Id.*  She then closed the compactor and left the room, but returned several minutes later and appeared to lock the compactor door.  *Id.*  According to Plaintiff, the boxes she threw away were empty.  Cross Dec. ¶ 36.

As part of his investigation, Mr. Ricketts interviewed Ms. Betancourt, who claims she found merchandise in the trash compactor.  Ricketts Decl. ¶ 4.  Mr. Ricketts inspected the retrieved merchandise and determined that it was saleable.  *Id.*  He directed Ms. Betancourt to prepare an itemized list of the merchandise, and he verified that the retrieved items matched the list.  *Id.*  Mr. Ricketts also reviewed an SGM report showing markdowns and mark outs for the prior 30 days including by markdowns by Plaintiff.  *Id.* ¶ 5.  The SGM report for August 21, 2016 also shows that Plaintiff processed items on that day.  Cross Decl. ¶ 37.  However, according to Mr. Ricketts, none of the merchandise retrieved from the trash compactor was logged in the SGM report for August 21, 2016.  Ricketts Decl. ¶ 6.

Mr. Ricketts reported the results of his investigation to his supervisor at the time, Regional Loss Prevention Manager Tony Loera, who told Mr. Ricketts that he believed an interview of Plaintiff was warranted and that he would review the matter with Dorothy Welch, Regional Manager of Human Resources.  *Id.* ¶ 7.  Mr. Leora later directed Mr. Ricketts to work with Jamie Nordbak, another Regional Loss Prevention Manager, to interview Plaintiff.  *Id.*  Ms. Nordbak took notes of the interview.  Dkt. 24-5 (Nordbak Decl.) ¶ 6 and Ex. A.  During the interview, Plaintiff prepared and signed a handwritten statement stating that she put merchandise in the trash compactor.  Dkt. 24-1 at 65.  The statement said that she thought the merchandise was damaged and that she had used the markdown machine and used SGM on the merchandise.  *Id.*  She also stated that "that day I was under a lot of pressure to finish my work," that "because of my mistake a caused a loss [sic]," and that "I clearly was not thinking that day and I did not realize

that the merchandise was not damaged out." *Id.* According to Plaintiff, she made this statement, which she claims was dictated to her by Ms. Nordbak, because she was fearful of losing her job and was told by Mr. Ricketts and Ms. Nordbak that stating that she had made a mistake was the only way she could keep her job. Cross Decl. ¶ 33.

Following Plaintiff's interview by Marshalls' Loss Prevention department, Plaintiff was placed on suspension to provide Marshalls time to complete the investigation. *Id.* ¶ 33; Welch Decl. ¶ 8.

Once the fact-collecting phase of the investigation was complete, Mr. Ricketts prepared an investigative report that he emailed to Ms. Welch and Ms. Loera. Ricketts Decl. ¶ 8 and Ex. A. Mr. Ricketts' also entered his investigation notes into the case management system. *Id.* ¶ 9 and Ex. B.

### G.    Plaintiff's termination

Marshalls terminated Plaintiff's employment on August 31, 2016. Cross Decl. ¶ 35. This decision was made by Ms. Welch and Mr. Kalbfleisch. Welch Decl. ¶ 10. Ms. Giron states she had no role in the decision to terminate or suspend Plaintiff's employment. Giron Decl. ¶ 7. In making the termination decision, Ms. Welch reviewed Mr. Ricketts' investigation summary and investigation notes, the SGM reports, video footage of the August 21, 2016 incident, video surveillance, and Plaintiff's written statement. Welch Decl. ¶ 9. According to Ms. Welch, she believed Plaintiff intentionally or at least negligently threw away saleable merchandise, and she and Mr. Kalbfleisch determined that Plaintiff's conduct violated Marshall's Merchandise Markdown, Negligence, and Honesty Policies and warranted termination. *Id.* at ¶¶ 9-10.

### H.    Plaintiff's discrimination claims

Following Plaintiff's termination, she filed a discrimination claim with the Equal Employment Opportunities Commission, which resulted in issuance by the agency of a right to sue letter. Complaint ¶¶ 19-20.

On June 13, 2018, Plaintiff filed suit in Santa Clara County Superior Court. On July 13, 2018, Marshalls removed the action to this Court. Dkt. 1. Plaintiff asserts a cause of action for discrimination in violation of California's Fair Employment and Housing Act ("FEHA") based on

race, religion, and age. Complaint ¶¶ 14-17. She seeks damages, injunctive relief, punitive damages, and other relief. *Id.* ¶ 18, Prayer.

Marshalls seeks summary judgment on Plaintiff's claims for discrimination, injunctive relief, and punitive damages. Dkt. 24.

### III.    LEGAL STANDARD

Summary judgment is appropriate if the moving party shows that there is no genuine dispute as to any material fact and the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1985). A genuine dispute of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* Even if summary judgment is not available on all claims in a case, a party may obtain partial summary judgment on a claim, defense, or portion thereof. Fed. R. Civ. P. 56(a).

The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial burden, the burden shifts to the nonmoving party to produce evidence supporting its claims or defenses. *Id.* at 1103. If the nonmoving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

"The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014). However, "the mere existence of a scintilla of evidence in support of the plaintiff's position" is insufficient to defeat a motion for summary judgment. *Id.*

(quoting *Anderson*, 477 U.S. at 252). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *City of Pomona*, 750 F.3d at 1049-50 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

A court considers only admissible evidence when reviewing a motion for summary judgment. *Weil v. Citizens Telecom Svcs. Co., LLC,* 922 F.3d 993, 998 (9th Cir. 2019).

## IV. DISCUSSION

### A. Discrimination Claims

In the complaint, Plaintiff alleges that Defendant subjected her to discrimination based on her race, religion, and age. Complaint ¶¶ 14-17. The adverse employment action she complains of in this case is her suspension and subsequent termination. *Id.* ¶ 14.

#### 1. Age discrimination claim

FEHA prohibits employment discrimination on the basis of age against employees who are over 40 years old. Cal. Gov't C. §§ 12926(b); 12940(a). At her deposition, Plaintiff, who was over 40 years old at the time she was terminated, stated that Mr. Kalbfleisch had promoted "younger girls," specifically Ms. Giron. Cross Depo. at 150:24-151:8; *see also* Cross Decl. ¶ 6 ("Mr. Kalbleisch [sic] favored non-Muslims, non-blacks, and people under 40 for the Store Manager position even though they had less experience than I did."); *id.* ¶ 5 ("At the time of termination I was over the age of 40 years."). However, Ms. Giron was promoted in April 2015, more than two years before Plaintiff filed her EEOC charge, and a claim based on that promotion is therefore time barred. Giron Decl. ¶ 4 (April 2015 date of promotion); Dkt. 24-1 at 67-71 (June 27, 2017 EEOC charge); Cal. Gov't C. § 12960(d) (administrative claim must be filed within one year from the date when the alleged unlawful practice occurred). Moreover, the complaint in this case focuses on Marshalls' suspension and termination of Plaintiff, not the company's failure to promote her. Complaint at ¶ 14 (alleging that Marshalls wrongfully "suspended and discharged Plaintiff"). In addition, Plaintiff was over forty years old at the time she was rehired by Marshalls in 2011, and the same person, Mr. Kalbfleisch, participated in both the decision to rehire Plaintiff and the decision to terminate her. *See* Kalbfleisch Decl. ¶ 3. Based on the facts of this case, no

reasonable trier of fact could conclude that Marshalls discriminated against Plaintiff on the basis of age. *See Lowe v. J.B. Hunt Transp.*, 963 F.2d 173, 175 (8th Cir. 1992) (affirming directed verdict for employer where plaintiff was a member of the protected age group at both the time of his hiring and his firing); *Rand v. C.F. Indust., Inc.*, 42 F.3d 1139, 1147 (7th Cir. 1994) (affirming summary judgment where plaintiff was hired at age 47 and terminated two years later). Accordingly, the Court GRANTS Defendant's motion for summary judgment on the age discrimination claim. *See Guthmann v. Classic Residence Mgmt. Ltd. Partnership*, No. 16-CV-02680-LHK, 2017 WL 3007076, at *7 (N.D. Cal. July 14, 2017) (granting summary judgment on plaintiff's claim for age discrimination where only evidence offered by plaintiff concerned gender discrimination claim).

### 2. Racial discrimination claim

FEHA also prohibits employment discrimination on the basis of race. Cal. Gov't C. § 12940(a). As discussed above, the declaration submitted by Plaintiff in opposition to Defendant's summary judgment motion attributes a statement to Ms. Rodriguez that "*people from the Middle East or Muslims* would not be hired at the Stevens Creek Store because Ms. Giron said she did not want to hire them," whereas in her deposition Plaintiff described Ms. Rodriguez's statement differently, as referring only to religion. *Compare* Cross Decl. ¶ 9 (emphasis added) *and* Cross Depo. at 187:1-3; *see also id.* at 194:9-10 ("I heard her talk about the Muslim – heard Marlene talk about the Muslim part"). Plaintiff cannot create an issue of fact by submitting a declaration contradicting her own deposition. *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009). Accordingly, even assuming Plaintiff points to Ms. Rodriguez's statement as evidence of racial discrimination, the Court construes Ms. Rodriguez's alleged statement as concerning only religion.

Plaintiff's only other evidence of racial discrimination is her deposition testimony that "the way Adriana [Giron] had treated me was, like, she didn't like black people or Muslims." Cross Depo. at 150:18-23. Plaintiff testified that Ms. Giron "had problems with other African American people there, too," mentioning Ms. Giron's interactions with two other African American employees. *Id.* at 154:20-23. First, Plaintiff testified regarding an incident when Ms. Giron was

"yelling" at Gwendolyn, a "post-retirement" African American woman who worked in the dressing room, because Ms. Giron wanted her to "work as fast as an 18-year-old or 20-year old." Cross Depo. at 154:24-155:8. But Plaintiff said she did not witness Ms. Giron's treatment of Gwendolyn. *Id.* at 155:15-19. Second, Plaintiff stated that Ms. Giron "totally focused" on a young African American woman who worked at the store by "zoom[ing] in on her attendance" and "every little thing that she was doing," and that Ms. Giron "would have meetings with us about her, telling us to watch her, basically. *Id.* at 188:2-189:13. However, Plaintiff admitted she did not know whether Ms. Giron had legitimate concerns about the young woman's attendance or other issues. *Id.* at 188:16-190:21. "FEHA addresses discrimination … it is not a shield against harsh treatment at the workplace." *Diaz v. Safeway Inc.*, No. C-07-01902 RMW, 2008 WL 2949272, at *4 (N.D. Cal. July 28, 2008) (citations omitted). The evidence concerning Ms. Giron's treatment of other African American employees is speculative, and even if it occurred, Plaintiff has not presented any evidence linking that treatment and the other employees' race.

As such, Plaintiff has not raised a triable issue of fact regarding her racial discrimination claims, and the Court therefore GRANTS Defendant's motion for summary judgment on that claim as well.

### 3. Religious discrimination claim

The Court next considers whether Marshalls is entitled to summary judgment on Plaintiff's claim for employment discrimination on the basis of religion, which is also prohibited under FEHA. Cal. Gov't C. § 12940(a). The proper analytical framework for evaluating a discrimination claim depends on whether the plaintiff has direct evidence of discrimination or instead relies on circumstantial evidence. *See Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221-22 (9th Cir. 1998). As discussed below, Plaintiff has no direct evidence of discrimination, so the Court must evaluate her claim under the framework applicable to cases involving circumstantial evidence.

### a.     Direct evidence of discrimination

Plaintiff argues that she has direct evidence of discrimination.  Specifically, Plaintiff points to the alleged statement by Operations Manager Ms. Rodriguez that Ms. Giron did not want to hire more Muslims.  Dkt. 30 at 11-12; *see also* Cross Depo. at 187:1-3.

Direct evidence of discriminatory motive is evidence which, if believed, proves the fact of discriminatory animus without inference or presumption.  *Godwin*, 150 F.3d at 1221.  In a case involving direct evidence of discrimination, the court does not engage in the *McDonnell Douglas* burden shifting analysis, which is discussed more fully below.  *Id.*; *see also* Dkt. 24 at 9 (statement in Defendant's motion for summary judgment that the *McDonnell Douglas* burden-shifting framework applies because "Plaintiff offers no direct evidence of discrimination by Marshalls").  Instead, "a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial."  *Godwin*, 150 F.3d at 1221.

Defendant argues that Ms. Rodriguez's alleged statement is not direct evidence of discrimination, for several reasons.

### i.     Evidence of Ms. Rodriguez's alleged statement

First, Defendant argues that Ms. Rodriguez and Ms. Giron both deny that Ms. Giron made the statement attributed to her.  Dkt. 35 at 2.  However, as discussed above, Plaintiff claims she overheard Ms. Rodriguez say that Ms. Giron did not want any more "Muslims here being hired."  Cross Depo. at 187:1-3.  On summary judgment, the Court must view the evidence in the light most favorable to Plaintiff.  *Anderson*, 477 U.S. at 255.  Thus, for purposes of this motion for summary judgment, the Court will assume that the statements by Ms. Rodriguez and Ms. Giron were made.

### ii.     Hearsay

Second, Defendant argues that "Plaintiff's testimony about what Giron allegedly said to Rodriguez is inadmissible hearsay within hearsay."  Dkt. 35 at 2.  However, under Federal Rule of Evidence 801(d)(2)(D), a statement is not hearsay and may be admitted against an opposing party if the statement "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed."  The Rule sets forth three elements necessary for admitting a statement that would otherwise be excluded as hearsay: (1) the statement must be made by an

11

agent or employee of the party against whom the statement is being offered; (2) the statement must concern a matter within the scope of that employment relationship; and (3) the statement must be made while the declarant is yet employed by the party. *Weil v. Citizens Telecom Svcs. Co., LLC*, 922 F.3d 993, 999 (9th Cir. 2019).

Both the alleged statement of Ms. Rodriguez and the alleged underlying statement of Ms. Giron satisfy these requirements. The first and third requirements are met because Ms. Giron and Ms. Rodriguez were employed by Marshalls at the time the statements were made in or around June 2015. Giron Decl. ¶ 4; Rodriguez Depo. at 21:3-6. The second requirement is also satisfied because Plaintiff contends (and Marshalls does not dispute) that the job duties of Ms. Giron (as Store Manager) and Ms. Rodriguez (as Operations Manager) included interviewing prospective new hires. Dkt. 30 at 4; *see also* Giron Depo. at 22:14-18; Rodriguez Depo. at 22:14-15 (testifying that her duties included interviewing new hires). The statements attributed to Ms. Giron and Ms. Rodriguez concerned hiring for the Stevens Creek store. A matter may fall within the scope of a declarant's employment even though the declarant did not have final decision-making authority on that matter. *Weil*, 922 F. 3d at 999 (citations omitted).

Under this analysis, each of the statements would qualify as nonhearsay under Rule 801(d)(2)(D) and would therefore be admissible.

### iii.     Stray remarks

Third, Defendant argues that biased comments by non-decision makers, or decision makers outside the decisional process, do not raise a triable issue of material fact as to the employer's intent. Dkt. 35 at 2. The "stray remarks" doctrine provides that "stray remarks not directly tied to the decisionmaking process are not direct evidence capable of defeating summary judgment." *France v. Johnson*, 795 F.3d 1170, 1173 (9th Cir. 2015); *see also Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 918-19 (9th Cir. 1996) (statement by plaintiff's supervisor to one of plaintiff's coworkers that he intended to get rid of all the "old timers" was insufficient to raise a genuine issue of fact as to whether age discrimination was the actual reason for plaintiff's termination in a layoff). Here, as discussed above, Plaintiff's attempt in her declaration to enhance the overheard statement of Ms. Rodriguez into a pronouncement of Marshalls' hiring policy fails

because her declaration is inconsistent with Plaintiff's description of the Rodriguez statement in her deposition.  As described in deposition, the alleged statements by Ms. Rodriguez and, by implication, Ms. Giron are stray remarks pertaining to a protected class (Muslims) of which Plaintiff is a member, but they were made more than a year before Plaintiff was terminated.  The statements did not pertain specifically to Plaintiff, her suspension, or her termination, but instead related to the non-hiring of other Muslims.  As such, this evidence is not direct evidence of Marshall's discriminatory intent.

### iv.    Conclusion regarding direct evidence

The Court concludes that Plaintiff has not presented direct evidence of religious discrimination.  Even if the Court credits the statements attributed to Ms. Rodriguez and Ms. Giron, these statements did not pertain specifically to Plaintiff and did not relate to her termination.  The stray remarks of co-workers who were not involved in the decision to suspend or terminate Plaintiff on issues separate from Plaintiff's employment, and occurring more than a year before her termination, would not permit the trier of fact to conclude without inference or presumption that Marshalls had a discriminatory animus towards Plaintiff.  *See Godwin*, 150 F.3d at 1221.  Accordingly, Plaintiff has not presented direct evidence of discrimination, and thus the Court must evaluate the evidence under the *McDonnell Douglas* framework.  *Id.*

### b.    Circumstantial evidence

Where direct evidence of discriminatory animus is unavailable, the plaintiff may come forward with circumstantial evidence that tends to show that the employer's proffered motives were not the actual motives.  *Id.* at 1222.  In this situation, discrimination claims are evaluated on summary judgment under the shifting burdens of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973).  *Id.* at 1220; *Santillan v. USA Waste of Cal., Inc.*, 853 F.3d 1035, 1042 (9th Cir. 2017) (analyzing FEHA claim under *McDonnell-Douglas* framework).  The *McDonnell Douglas* framework is as follows:  (1) the plaintiff must establish a *prima facie* case of discrimination; (2) the burden of production then shifts to the employer to respond with a legitimate, nondiscriminatory reason for its action; and (3) the burden then shifts back to the plaintiff to establish that the employer's articulated reason was a pretext for unlawful

discrimination. *Godwin*, 150 F.3d at 1220. If the plaintiff does not raise a genuine issue of material fact as to whether the employer's reasons for terminating him were pretextual, the court need not decide whether she can establish a prima facie case of discrimination. *See Curley v. City of N. Law Vegas*, 772 F.3d 629, 632 (9th Cir. 2014).

Plaintiff has offered evidence in support of her claim of religious discrimination, including evidence of Ms. Rodriguez's alleged comment that Ms. Giron had directed that no other Muslims be hired and evidence that Ms. Giron allegedly treated Plaintiff differently from other employees. For purposes of this motion for summary judgment, the Court assumes without deciding that Plaintiff has established a prima facie case of religious discrimination. *See, e.g., Guthmann*, 2017 WL 3007076, at *7; *Tomada v. Home Depot U.S.A., Inc.*, No. 13-CV-1647 YGR, 2014 WL 2538792, at *16 (N.D. Cal. June 3, 2014). As explained below, however, Marshalls has met its burden of providing a legitimate, nondiscriminatory reason for suspending and terminating Plaintiff, and Plaintiff has not raised a genuine issue of material fact as to whether that reason was a pretext for religious discrimination.

### i. Employer's reason for suspension/termination

Marshalls' stated reason for suspending and terminating Plaintiff is Plaintiff's conduct in discarding boxes of saleable merchandise in August 2016. *See* Dkt. 24 at 12. As outlined above, Marshalls conducted an investigation of the incident in which loss prevention personnel reviewed a videotape of the incident, interviewed Plaintiff and Ms. Betancourt, and reviewed the merchandise that was in the discarded boxes that had been retrieved. *See* Ricketts Decl. at ¶¶ 3-10 and Exs. A and B; Nordbak Decl. at ¶¶ 4-8. During the investigation, Plaintiff provided a written statement acknowledging that she had thrown away boxes of merchandise without following Marshalls' markdown policy, albeit by mistake. Dkt. 24-1 at 65. Based on the results of the investigation, Mr. Kalbfleisch and Ms. Welch concluded that Plaintiff had violated Marshalls' policies and should be terminated. Welch Decl. ¶¶ 8-10.

Much of Plaintiff's opposition to Marshalls' summary judgment motion focuses on whether or not she in fact violated Marshalls' Markdown Policy when she discarded boxes in August 2016. *See, e.g.,* Dkt. 30 at 8-10. However, "[f]or purposes of establishing the moving

employer's initial burden of proof, it does not matter whether plaintiff actually did commit [a] violation as long as [the employer] honestly believed [she] did." *Guthmann*, 2017 WL 3007076, at *8 (quoting *King v. United Parcel Serv., Inc.*, 152 Cal. App. 4th 426, 433 (2007)). Here, the undisputed facts establish that Marshall entertained an honest belief that Plaintiff had discarded merchandise in violation of Marshalls' policies.

Therefore, the Court finds that Marshalls has met its burden of articulating a legitimate, nondiscriminatory reason for Plaintiff's suspension/termination.

### ii. Pretext

Having found that Marshalls has shown a legitimate, nondiscriminatory reason for the employment actions taken against Plaintiff, the burden shifts to Plaintiff to come forward with evidence establishing that Marshalls' proffered justification was merely a pretext for discrimination. An employee can prove pretext either (1) directly, by showing that unlawful discrimination more likely motivated the employer; or (2) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable. *Dep't of Fair Employment and Housing v. Lucent Techs., Inc.*, 642 F.3d 728, 746 (9th Cir. 2011). If a plaintiff uses circumstantial evidence to satisfy her burden of showing pretext, the Ninth Circuit has held that evidence must be "specific and substantial." *Lucent Techs.*, 642 F.3d at 746 (citing *Godwin*, 150 F.3d at 746). However, some subsequent Ninth Circuit opinions have questioned whether a lesser amount of circumstantial evidence will suffice. *See, e.g., France*, 795 F.3d at 1175 (noting that Supreme Court has placed direct and substantial evidence on an equal footing, and commenting that "this 'specific and substantial' standard is tempered by our observation that a plaintiff's burden to raise a triable issue of pretext is hardly an onerous one") (citations omitted). Where, as here, the plaintiff's evidence of pretext is insufficient under either standard, the court need not determine what quantum of circumstantial evidence is required. *See Gardias v. California State Univ.*, No. C07-06242 HRL, 2009 WL 3009745, at *6 (N.D. Cal. Sept. 17, 2009).

**(1)      No showing of pretext based on Plaintiff's allegations regarding Ms. Giron**

Most of Plaintiff's arguments regarding pretext are directed at Ms. Giron: her alleged animus towards Muslims, her alleged unfavorable treatment of Plaintiff, and her alleged behind-the-scenes influence over Plaintiff's termination. *See* Dkt. 30 at 17-18. As discussed above, the alleged discriminatory statement of Ms. Giron (as indirectly implied by Ms. Rodriguez) was removed in time from the employment actions that are the subject of this lawsuit, did not pertain specifically to Plaintiff, and had nothing to do with her suspension/termination. To be sure, "to create a genuine dispute of material fact on pretext, a speaker of discriminatory statements need not be the final decisionmaker of an employment decision." *France,* 795 F.3d at 1176. Under the "cat's paw" theory, even if a biased subordinate employee was not the final decisionmaker, the plaintiff can establish a causal link by proving that the biased subordinate influenced or was involved in the decisionmaking process. *Id.* (citing *Poland v. Chertoff,* 494 F.3d 1174, 1182 (9th Cir. 2007)). It is undisputed that Ms. Giron was part of the reporting chain that brought the August 2016 trash compactor incident to the attention of Marshalls' Loss Prevention department. However, there is no evidence that Ms. Giron witnessed the incident, saw the video, participated in the investigation, or contributed to the decision to suspend or terminate Plaintiff's employment; in fact the evidence shows that she was not involved in any of these matters. *See* Giron Decl. ¶ 7; Nordbak Decl. ¶ 7; Welch Decl. ¶ 10. Significantly, Plaintiff has presented no evidence otherwise. Instead Plaintiff offers only insinuation that Ms. Giron somehow influenced the decision. Cross Decl. ¶¶ 38-40. This is not enough to establish that Ms. Giron's alleged animus was the "proximate cause of the ultimate employment action," as required for application of the "cat's paw" doctrine. *See Staub v. Proctor Hosp.*, 562 U.S. 411, 422 (2011). Ms. Giron's reporting of the trash compactor incident, on its own, is not sufficient to impute Ms. Giron's alleged animus to Marshalls' decision to suspend and terminate Plaintiff's employment because there is no evidence that Ms. Giron influenced, affected, or was involved in the decisionmaking process. *See Poland*, 494 F.3d at 1183.

Plaintiff more generally claims that Ms. Giron treated her less favorably than other

16

employees by, for example, not greeting Plaintiff, yelling at her in front of customers about her rearrangement of merchandise, being picky about how Plaintiff performed her job, staring at Plaintiff during group meetings, and yelling at Plaintiff over her purchase of paper plates for an employee potluck. Cross Decl. ¶¶ 8, 15. However, Plaintiff has failed to present evidence linking this alleged mistreatment to Plaintiff's religion, race, or age. Moreover, an element of a claim for employment discrimination is that the employer took adverse employment action against the plaintiff. *See Blount v. Morgan Stanley Smith Barney LLC*, 982 F. Supp. 2d 1077, 1082 (N.D. Cal. 2013). The "definition of adverse employment action does not extend … to rude or offensive comments." *Id.*; *see also Nguyen v. McHugh*, 65 F. Supp. 3d 873, 893 (N.D. Cal. 2014) (finding, while employee "may have felt embarrassed" when supervisor gave her "verbal warnings" regarding propriety of her conduct, "a bruised ego" does not "rise[ ] to the level of an adverse employment action"). Thus, Ms. Giron's alleged mistreatment of Plaintiff does not demonstrate that Marshalls had a discriminatory reason for suspending and terminating Plaintiff.

Plaintiff also alleges that Ms. Giron excluded Plaintiff from interviewing new hires. Cross Decl. ¶¶ 10-13. Defendants dispute this contention. *See* Dkt. 35 at 6. However, any factual dispute on this issue is immaterial because there is no link between Plaintiff's alleged exclusion from interviews and the adverse employment action alleged in this case, which is her suspension and termination.

### (2)    No showing of pretext based on Plaintiff's allegations regarding Mr. Kalbfleisch

Having failed to establish a link between Ms. Giron's alleged discriminatory intent and Marshalls' decision to suspend and terminate Plaintiff, Plaintiff next attempts to establish bias on the part of Mr. Kalbfleisch, one of the termination decision-makers. *See* Dkt. 30 at 13-14. Plaintiff complains that Mr. Kalbfleisch refused to promote Plaintiff to store manager (and instead promoted Ms. Giron), did not investigate Plaintiff's discrimination complaint against Ms. Giron (and instead encouraged the Formal Counseling by Ms. Giron against Plaintiff), and claimed not to know that Ms. Giron accused Plaintiff of being a repeat offender of Marshalls' policies regarding marking down merchandise. *Id.* To the extent these allegations against Mr. Kalbfleisch are simply the flip-side of Plaintiff's allegations against Ms. Giron, they fail for the same reason—

17

there is no evidence linking those alleged events to Plaintiff's religion, race or age or to the employment actions taken against Plaintiff in 2016. In sum, Plaintiff has failed to present evidence sufficient to create a triable issue of fact concerning Mr. Kalbfleisch's alleged discriminatory intent.

Although not the decisive factor in the Court's conclusion that Plaintiff has failed to present adequate evidence of pretext, the Court notes the following undisputed facts. Mr. Kalbfleisch, who participated in making the decision to terminate Plaintiff's employment, was the person who hired Plaintiff in the first place and later promoted her. Specifically, Mr. Kalbfleisch hired Plaintiff in 1999, and subsequently promoted her twice during her first term of employment with Marshalls. Kalbfleisch Decl. at ¶ 3. Mr. Kalbfleisch rehired Plaintiff for her second term of employment, beginning in 2011. *Id.* There is a strong inference against bias where an employer who hires or promotes a plaintiff later takes an adverse action against her. *Coghlan v. American Seafoods Co. LLC*, 413 F.3d 1090, 1096 (9th Cir. 2005). "A supervisor who hires or promotes an employee affirmatively forwards the employee's career; this affirmative enhancement of the employee's career prospects is strong circumstantial evidence of a lack of bias on the supervisor's part." *EEOC v. Boeing Co.*, 577 F.3d 1044, 1052 (9th Cir. 2009). Several years passed between the actions Mr. Kalbfleisch took to assist Plaintiff's career at Marshalls and his decision to terminate her, which may weaken the presumption that no bias was involved in the termination decision but does not destroy it. *Coghlan*, 413 F.3d at 1097 (inference remained despite three-year lapse between hiring and adverse action); *Horn v. Cushman & Wakefield Western, Inc.*, 72 Cal. App. 4th 798, 809 n.7 (1999) (five years is "not so long a time as to attenuate the presumption").

In sum, Plaintiff has failed to come forward with evidence sufficient to enable a reasonable factfinder to conclude that Marshalls' reason for suspending and subsequently terminating Plaintiff was a pretext. Plaintiff has not shown that Marshalls' explanation that it took these actions against her based on the results of the investigation of the August 2016 trash compactor incident is unworthy of credence, nor has Plaintiff shown that unlawful discrimination more likely motivated these employment actions. Taken as a whole, the evidence shows that Marshalls had an

honest belief in the occurrence of the August 2016 trash compactor incident—which was recorded on video and fully investigated, and which Plaintiff acknowledged in a written statement—and that Plaintiff had acted in violation of Marshalls' corporate policies. Accordingly, the Court GRANTS Defendant's motion for summary judgment on Plaintiff's claim for religious discrimination.

### B. Remedies

Defendant also seeks summary judgment in its favor on Plaintiff's claims for injunctive relief and punitive damages, arguing that those claims fail as a matter of law. Dkt. 16-17. Because the Court has granted summary judgment on the only cause of action in Plaintiff's complaint, there remains no claim upon which a request for injunctive relief or punitive damages may rest. *See Tenerelli*, 2016 WL 3072192, at *14. Accordingly, Defendant's motion for summary judgment on Plaintiff's claim for injunctive relief and punitive damages is GRANTED.

## V. EVIDENTIARY OBJECTIONS

Defendant objects to portions of the declarations submitted by Plaintiff and her attorney in connection with her opposition to Defendant's motion for summary judgment. Dkt. 35 at 13-15. Certain of these objections have been addressed in preceding sections of this order. *See, e.g.,* objection to Cross Decl. ¶¶ 6-7 on the grounds that Plaintiff's claim regarding Ms. Giron's promotion is time-barred; objection to Cross Decl. ¶ 9 on the grounds that Plaintiff's description of the Rodriguez statement in her declaration contradicts her deposition testimony and on the grounds of hearsay. Except as provided elsewhere in this order, the Court has reviewed these evidentiary objections and overrules them as moot because even considering Plaintiff's allegations as admissible evidence, her claims fail for the reasons discussed above.

## VI. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED.

**SO ORDERED.**

Dated: August 29, 2019

SUSAN VAN KEULEN
United States Magistrate Judge